Our final case for argument this morning is A&D Property Consultants against A&S Lending. Mr. Allitt. If it please the Court, I represent the appellant, A&D Consultants, Inc. Your Honors, I will be brief in my opening remarks because I've observed you in the last three cases and seem extraordinarily prepared, so I don't want to go waste our time going over what you already know. There is one housekeeping matter I want to call to the Court's attention. When this case was first brought against my client by A&S, in the counterclaim they designated my client as A&D, and again my client is called A&D Consultants. A ampersand D was the name of my consultants for the briefing all the way through the back. Sometimes in this briefing and sometimes in the complaint you will see confusion between A&D and A&S because they had virtually identical designations. We stopped doing that for the briefing before this Court, but that will explain. You will see that popping up from time to time in the case. This case involves a complaint that was brought against my client who had not been party to the litigation, and my client then litigated for two years with A&S Consultants about a transaction that had occurred on April 6, 2017, that involved nine interconnected documents, including a deed of trust, promissory note, co-par agreements, and a number of other documents relating to that transaction on April 6, 2017. In the complaint it was alleged that my clients, I had two at the time, the non-party Ms. Groves now, as well as consultants, had breached the promissory note. We denied that allegation in our answer. The claims on the promissory note that belonged to A&S Lending were never brought forward in the litigation. We believe that is a plain violation of Rule 13, and we have been litigating this now through the BAP and before that, and we have been faced with some novel arguments raised by the courts to not apply Rule 13. We believe these novel arguments are wrong and that Rule 13 should simply be an opposing party. It messed up on that because even after my client was brought into this litigation by A&S, A&S filed another pleading six weeks later, once again not bringing their claims under the promissory note. So there can be no doubt by the time that they were filing their pleading, six weeks after they had to say we were not an opposing party at the time we were served because the determination is made the nanosecond before service and not during service. We don't have to get into that. The BAP overlooked the subsequent pleadings that were filed by A&S. The BAP also tried to say that this transaction, which plainly arises out of a single transaction, did not meet the requirements of Rule 13 that it be one transaction. And the argument was that my client had not put the matter into question, but we had in our answer. And admittedly, Rule 13 imposes a penalty for failure to comply that's harsh, but it does so to avoid the litigation twice. By the same litigation, we'd call the same witnesses, the same documents, the same discovery, all over again. So the BAP, excuse me, the BAP expressed some uncertainty as to exactly what it is that you think they needed to assert as a compulsory counterclaim. So can you clarify what is the to assert that they believe they were entitled to payments under the promissory note that exceeded what our defenses and payments would be? They didn't do that. And the relief that they would be seeking would have been, what, a money judgment? Yes. Yes, a money judgment for that amount. And so how does that fit in with saying that there's a compulsory counterclaim here? They, to the extent they retained the right to do a foreclosure, and we don't contend that they didn't, they simply never exercised it. So the right to do a judicial foreclosure or non-judicial foreclosure has never been impinged or They, by their own pleadings, have said it wasn't useful to them, though, because of their defects in their deed of trust, and they never went forward with it. But my client never did anything to stop them from doing a deed of trust. Mr. Elliott, just to follow up on Judge Miller's question, in terms of you're essentially saying that that ANS should have been judicially a stop from seeking to enforce its claims against your client, correct? In the context of consultants, it was not an opposing party in the context of the adversarial proceeding as to Ms. Groves. And following up, I guess, on Judge Miller's question, essentially you're saying that ANS is required to assert a counterclaim in that context against consultants, which was not a party to the adversarial proceeding, and thereby has no choice of remedy in terms of a trustee sale or a judicial foreclosure. There's no remedy, because Ms. Groves, by the way, the record is we haven't mentioned, A&D is Ms. Groves, correct? She is the only principal. That's her company, correct? It is her company. So Ms. Groves and A&D are identical. There is no other principal behind A&D. She is the owner, operator. She is A&D in the corporate context, correct? Well, yeah, there is, I mean, there is a corporate entity that... Well, I understand, but my point is there's not another shareholder, there's no one else, there's not a limited partner. It is her corporate, it is her business entity, correct? She owns it 100%. 100%. So Ms. Groves, the underlying principal here is Ms. Groves proceeds with Chapter 13 personal bankruptcy, and what underlies here is the matter of that how that affects her company, A&D, and your point is, is that to the extent that she puts this in the bankruptcy posture, and there's an adversarial proceeding, that this is some kind of compulsory counterclaim under 13a, a compulsory counterclaim against consultants, and consultants is not an opposing party in the context of this bankruptcy proceeding. May I address that, Your Honor? Sure, that's what I'm trying to ask. I think that's essentially the thrust of Judge Miller's question. So Ms. Groves brought the complaints... I wasn't understanding my question. In the context of Judge Miller's question, what is the basis to say that because she has structured this corporate entity, that she has filed for bankruptcy, and then within the context of the lien, in terms of half of the proceeds of the sale of the house which underlies this entire process, that thereby she can impose upon ANS a compulsory counterclaim in that's really, to me, the thrust, the underlying thrust of what Judge Miller was just asking, and that's what I need for you to address from my point of view. Let's go through the procedure first. Groves brought the complaint seeking only a declaratory judgment as to the lien rights in the property that she owned. ANS then brought a counterclaim with leave of the court in August of 20, seeking reformation of that deed of consultants at that point in time. At that point in time, consultants became an opposing party because ANS voluntarily elected to bring them into the litigation. So once consultants was in the litigation, ANS needed to bring all of its claims. It couldn't claim split. It couldn't hold back and say, we're just going to litigate part of this transaction, and there's part that we don't want to. They elected to bring in consultants. Consultants didn't start this litigation. Consultants never needed to be in this litigation, but they brought them in, and having brought them in, they can't litigate halfway with them. That's our condition, and that's what Rule 13 prevents. And it's important here, after they brought them in, six weeks later, they filed another pleading, which was an answer to the second amended complaint. By that point in time, there can be no dispute. My client's an opposing party. He's an opposing party because they brought him in, and once they brought them in, they needed to, in any subsequent pleading, bring all of their claims. That's Rule 13, and that is claim preclusion, which is the sister-companion underlying theory of Rule 13. So we were an opposing party. This transaction plainly arises out of the same thing. The BAP said we needed to do something more than simply deny the liability on the promissory note in our answer to call it into question. But Rule 13 doesn't contain that. The plain language of 13 didn't require that. You're being asked here today, it's a Danover review, to balance the harm of them losing their claim for not complying with Rule 13, or my client, who can't afford a second litigation, finding that is her only remedy. And the Rule 13's already made that decision for the courts. The party that gets punished is the party that didn't bring their claim, that impermissibly split the claim. Well, really, at the end of the day, aren't you trying to seek an extinguishment of a lien on non-debtor property? No, I think the amount... I mean, I read all this. I mean, the whole theory of bankruptcy, with respect to secured creditors, is they are protected under the Fifth Amendment, and there are all sorts of bankruptcy protections for their property interests, including liens. But as I read through all of your documents, and you can correct me if I'm wrong, what you seem to be seeking is, one, the extinguishment of their lien, two, denying them allocation of the assets on the sale of the property, and this involves a non-debtor. Both parties are non-debtors. And your argument is that because they didn't either assert their lien rights under Rule 13, you think they should have either asserted their lien rights or lose them under Rule 13, or lose the right to distribution. That's your argument, right? Well, they're claims under the promissory note. In other words, the amount that was owing is what's in dispute. And by not bringing their claims, we never were afforded the opportunity to defend against those claims and raise our defenses that we had. How much money does this take here now? $237,000 is what was paid over. And to give you an idea, what Groves ended up paying for her half of this debt based on the thing was much smaller than that. And we were comfortable paying something much smaller, but not the $237,000. And we never got a chance to litigate this, even though we were in litigation with this firm here, and Rule 13 prevents that harm. And my client, Consultants, was not a debtor. They could have proceeded with a trustee sale. They could have done whatever they wanted to with Consultants. The case law is real clear in the Ninth Circuit that an LLC is not protected by the stay of its principal. Well, in bankruptcy, you can file multiple adversary proceedings on various debts. I mean, that's a little bit different from a normal suit in federal court. It's not unusual. I'm not sure what... we didn't file multiple. I know you didn't. I'm just saying what your argument is, that if an issue is raised by adversary proceeding, then there's a compulsory counterclaim. You have to bring all of these things. But in fact, in the reality of bankruptcy, there are a lot of things that are litigated through various adversary proceedings involving some one of the same debts. Just saying. Yeah, my client could not have possibly filed an adversary being a non-debtor. It would have had to have been Mrs. Groves, and she was situated differently. She didn't need to litigate this issue because they'd already waived their claims with regard to that. So they were not filing a proof of claim. So I'd like to... Was Consultants listed as a creditor in the Chapter 13 filing? Consultants was not a creditor and was not listed as a creditor. You're down to just over a minute. Do you want to reserve? I'd like to reserve my time. Okay, you may. Mr. Allen. Morning, Your Honors. May it please the Court. David Allen, representing ANS Lending, LLC, which is the lender in this litigation. As stated by the Bankruptcy Appellate Panel in the very first sentence of its opinion, affirming the trial court order, and I quote, these consolidated appeals call into question a debtor's ability to sell property co-owned with a non-debtor free and clear of liens against the non-debtor's interest under 11 U.S.C. Section 363F. What the Court goes on in its opinion to make the statement that the Bankruptcy Code does not permit Bankruptcy Court to authorize a sale free and clear of liens and interest attaching to non-debtor co-owner share of the property being sold under 363H. So, what we need to do here is we need to separate out 363B1 and 363F from 363H. Under 363B1 and 363F, as the Court knows, the Bankruptcy Court may authorize the sale of property of the estate, and those are the key words, property of the estate, free and clear of liens if certain criteria are met including one of which is that there's a bona fide dispute. Now, put that aside and let's look at 363H. Under 363H, the power of the Bankruptcy Court is extended to authorize the sale of property that is not the property of the estate but what is co-owned by a third party when the estate, when there is a co-ownership type of situation. What consultants are attempting to do here by their argument is they're totally conflating 363H with 363B1 and F4. They argue that the property of a non-debtor owned jointly with the estate can be sold under 363H free and clear under the conditions of 363F4 which allow estate property to be sold free and clear. The problem with their argument is there's absolutely no law whatsoever to support it and not only that but it really makes no sense. As stated in the Marco case which I cite in our brief, it held that 363F4 could not be used in connection with 363H. As doing so, and I'll quote, risk impermissibly overextending bankruptcy relief to non-debtor parties. I think this is what your honor was getting to a few moments ago with your question. When the Bankruptcy Court, when the Bankruptcy Code only affords such relief to debtors and the bankruptcy estate. The bankruptcy estate can sell property free and clear under certain conditions and the Bankruptcy Court can order the sale of the jointly owned property but there's no statutory or case or any other authority for the concept being proposed here by the appellant which is that those two statutes should be jammed together and somehow give the power of the Bankruptcy Court power to say hey you're a non-debtor. I'm forcing, not only am I forcing you to sell the property under H but I'm going to apply BNF to you also and say that your lien is wiped out. That makes absolutely no sense whatsoever. There's no authority for that and I guess I'll move on to the, unless the court has questions on that one, I'm going to move to the compulsory counterclaim issue. Mr. Allen, in terms of the the application of 363 F before we get to E, essentially as I understand it, even if the Bankruptcy Court erred in authorizing the judicial sale free and clear of liens that has the latitude under 363 E to still provide adequate protection and when all is said and done the Bankruptcy Court came to the right result in terms of allocating half the funds of the sale of the property to ANS essentially. That's exactly correct. I mean they may have been an error along the way but ultimately under 363 E, providing adequate protection of an interest that is sold, it is meant to protect the interest of the secured creditor so the Bankruptcy Court still got the right result ultimately. Absolutely. ANS had a secured debt as to A&D's interest in the property being sold. That was the outcome of the trial. Obviously it was ANS's position that the debt should have covered the bankrupt Ms. Groves, also her half interest, but we lost on that part of it. Nevertheless, there's no question that A&D's debt was properly affirmed by the Bankruptcy Court. There was never any question about it. So yeah, I mean certainly the court came to the correct result by saying okay I'm going to order under H, I'm going to order the sale of this property. However, the secured debt doesn't go away and the one half of the sale proceeds belonging to A&D has to be paid over to the creditor which is ANS. Can you tell me what the status of the bankruptcy is? That's probably a better question for Mr. Ella, but it's my understanding that the discharge was entered and the bankruptcy case is complete. So there was a confirmed plan? Yes, there was a confirmed plan. And under the confirmed plan, how was this debt and the security interest treated? Well, you're talking about the security but alluded to there was an agreement for an amount to be paid that was substantially less than the amount of the debt would have been absent of the bankruptcy. I guess I'll put it that way. Right, but there was no adjustment as to the lien itself and the bankruptcy plan? To my knowledge, no. But again, Mr. Ella probably is a better person to answer that question. Thank you. No compulsory counterclaim issue, the simple logic of how the position being taken by Mr. Ella and his client make no sense is that he wants to argue that any time there is a debt relief action, whether in or out of bankruptcy court, but we can keep it in bankruptcy court, but in any event, any time there's a debt, there's a declaratory relief action regarding this because here the declaratory relief action was filed by Ms. Groves as an adversary action asking the court to determine the scope of the security. My client and ANS answered that and at some point in the litigation moved it forward and was granted permission to file a counterclaim because it wouldn't make any sense to win on the underlying case and say, yeah, the security is this big when there was ambiguity in the security document. So in anticipation of prevailing on Ms. Groves' claim, ANS, my client, filed the counterclaim also, and as Mr. Ella said, for reformation saying, okay, based upon the way that the security was intended to be, this is what the deed of trust should say. There was never any discussion, never any issue about whether how much was the debt, whether the debt was legitimate. There was nothing, and the problem with Mr. Ella's position is it's a very important right to a security creditor to have the right of non-judicial foreclosure, and if that could be taken away by the debtor simply by filing a debt relief action saying, well, you know, we think the scope of the secured property is unclear here, so we want the court to adjudicate that, Mr. Ella would then say, well, then we have to file. The creditor then has to come in and file a claim to collect in a judicial manner the note, in other words, a judicial foreclosure, which totally is a much more involved, lengthy, expensive process than simply the non-judicial foreclosure to which the creditor has the right, and that right can simply not be taken away because of the fact that there was a debt relief action filed. As the court knows, the Arizona and the federal courts use the logical relationship to determine if a claim arises out of the same transaction or occurrence for the purpose of Civil Rule 13a, making it a compulsory counterclaim if a logical relationship exists between the prospective counterclaim and the adverse party claims. Here, as correctly found by the bankruptcy appellate panel, not only is there no logical relationship, there is no relationship. The fact that, you know, Mr. Ella argues, well, yeah, there's nine different documents that were signed as part of a loan package, that doesn't mean that there's any relationship between an action brought by a debtor to obtain a declaration regarding the scope of the security, and an action by the lender to collect the debt. And so, you know, there's case law also cited in the ANS's brief, the case of Douglas versus NCNB, Texas National Bank, that states that the federal counterclaim rule FRCP 13a is inapplicable if it abridges, enlarges, or modifies the plaintiff's or defendant's substantive rights. Under Texas, and for that matter Arizona, I'll throw that in law, lenders have a substantive right to elect judicial or non-judicial foreclosure in the event of a default, and debtors have no right to force the lender to pursue a judicial foreclosure remedy. That is, that very clearly applies here. There's this, to follow Mr. Ella's argument, the rights of the creditor, my abridged or modified in contravention of Rule 13a, that just, you can't, you can't do that. You can't do what he wants to do. And so, in any event, you know, I guess the last thing I'll mention, because there was discussion by Mr. Ella about, and the court had asked questions about, the opposing party issue. For the reasons that I just argued under 13a, it doesn't really matter in this instance, because of the lack of a logical relationship. However, to address it, the consultants was not a party at all in the adversary action that was brought by Ms. Groves. It only was brought in as a, as a necessary party on the reformation action filed by ANS. That limited, that was their limited involvement. It doesn't make them, there was no opposition or no opposing with respect to the debt itself. The only issue being litigated in the adversary complaint and counterclaim was the issue of the scope of the security in which Ms. Groves prevailed on that particular issue. But in any event, it was certainly not, under those limited circumstances, I would, I would argue that, that A&D, or consultants as we call them, is not opposing, is not an opposing party under these circumstances for the application of 13a. So, I think, unless the court has any questions, I believe I covered it. Thank you very much. Thank you, Your Honors. Jarella. Some quick answers. Chapter 13 was 100% payment plan in full. All creditors were paid in full. Mr. Groves, ANS was not paid on their claim, which they refused to file. Having failed to file it, we didn't have to pay them anything than what their lien interest was. Paid everybody in full, though. The deck, it would be a Rule 11 violation, and I've never in my life... Did the shares of stock that your client, that she owned, pass through the Chapter 13 plan? Yes, because it was a 100% payment plan, so, yes. And I gather there was no determination as to the real property at issue, in terms of the lien. That was resolved in my client's favor, both clients' favor, in the first action, that the lien only meant what it said. The reformation action was unsuccessful. But I'm saying, the plan did not alter any of that, correct? No. It's a 100% payment plan. The deck relief action did not trigger Rule 13. It was when they filed the reformation, and brought my client in, that triggered the requirements of Rule 13. There's a safe haven for a debtor's action under 713. So, nothing about the deck relief action triggers this. It's the reformation action. 363F plainly allows for the sale of property, not estate property, provided that such entity consents. Both owners consented to the sale of the property. We clearly could sell the property under 363F. The adequate protection in E is meant to protect not only the creditor, but the co-owner. The co-owner never was given the opportunity to litigate this, because they didn't bring it when they were supposed to. They didn't bring it by filing a proof of claim. They didn't bring it under Rule 13 in the litigation. Right. Thank you. They shouldn't be allowed to do that. Thank you, Mr. Allott. We thank both counsel for their helpful arguments, and the case is submitted. And we are adjourned for the day. This court for this session stands adjourned.
judges: THOMAS, MILLER, Bennett